1   Jack Silver, Esq. SBN 160575
2   Jerry Bernhaut, Esq. SBN 206264
    Law Office of Jack Silver
3   Post Office Box 5469
    Santa Rosa, CA 95402-5469
4   Tel.   (707) 528-8175
5   Fax.   (707) 528-8675
    lhm28843@sbcglobal.net
6
    Attorneys for PLAINTIFF
7   NORTHERN CALIFORNIA RIVER WATCH          **E-filing**

8
9                       UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11
12   NORTHERN CALIFORNIA RIVER          CASE No.  **08        2097**
     WATCH, a non-profit corporation,
13
                                        COMPLAINT FOR INJUNCTIVE RELIEF,
14              Plaintiff,              CIVIL PENALTIES, RESTITUTION AND
         v.                             REMEDIATION
15                                      (Environmental -
     SAUSALITO-MARIN CITY SANITARY      Clean Water Act - 33 U.S.C. §1251 et seq)
16   DISTRICT and DOES 1-10, Inclusive,
17
                Defendants.
18   _____/

19          NOW COMES PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH a non-profit

20   corporation, (hereafter, "RIVER WATCH") by and through its attorneys, and for its Complaint against

21   Defendants, SAUSALITO-MARIN CITY SANITARY DISTRICT and DOES 1-10, Inclusive,

22   (hereafter, "DEFENDANTS"), states as follows:

23                            **I. NATURE OF THE CASE**

24   1.     This is a citizens' suit for relief brought by RIVER WATCH under the Federal Water Pollution

25   Control Act, also known as the Clean Water Act (hereafter, "CWA"), 33 U.S.C. §1251 et seq.,

26   specifically CWA § 505, 33 U.S.C. §1365, 33 U.S.C. § 1311, and 33 U.S.C. § 1342, to stop

27   DEFENDANTS from repeated and ongoing violations of the CWA. These violations are detailed in the

28

1   Notice of Violations and Intent to File Suit dated July 5, 2007 (hereafter, "CWA NOTICE") made part

2   of this pleading and attached hereto as EXHIBIT A.

3   2.      DEFENDANTS have routinely violated and are continuing to routinely violate the CWA by

4   violating the effluent discharge standards or limitations in the National Pollutant Discharge Elimination

5   System ("NPDES") Permit under which DEFENDANTS' wastewater treatment plant and associated

6   wastewater collection system was previously regulated, Order No.: 00-060, NPDES Permit No.:

7   CA0038067 ("2000 Permit"); and, by violating the effluent discharge standards or limitations in the

8   NPDES Permit under which DEFENDANTS' wastewater treatment plant and associated wastewater

9   collection system are currently regulated, Order No.: R2-2007-0054, NPDES Permit No. CA0038067

10   ("2007 Permit").

11        Numerous sewage pipeline surface overflows to waters of the State have occurred and continue

12   to occur from DEFENDANTS' sewage collection system, as well as ongoing, underground overflows

13   to hydrologically connected waters of the State caused by exfiltration of untreated sewage from aging

14   deteriorated sewer pipelines, in violation of Discharge Prohibition A.2 of the 2000 Permit which states:

15       "The Bypass or overflow of untreated wastewater to Waters of the State, either at the
         treatment plant or from the discharger's collection system or pump stations tributary

16       to the treatment plant, is prohibited, except as provided under conditions stated in
         40 CFR 122.42 (m)(4) and (n).",

17

18   and, in violation of Discharge Prohibition A.4 of the 2000 Permit, which states:

19       "Discharges of water, materials or wastes other than storm water, which are not
         otherwise authorized by an NPDES permit, to a storm drain or waters of the State
         are prohibited."

20

21        All such unauthorized overflows from DEFENDANTS' collection system which occurred after

22   August 8, 2007 when the 2007 Permit was adopted, are in violation of paragraph III.E. of the 2007

23   Permit which prohibits "any sanitary sewer overflow which results in a discharge of untreated or partially

24   treated waste water to waters of the United States."

25        Numerous violations of effluent limits occurred at DEFENDANTS' wastewater treatment plant,

26   including violations of the limit on Total Suspended Solids (2000 Permit - Effluent Limitation B.1.b),

27   violations of the limit on biochemical oxygen demand (2000 Permit - Effluent Limitation B.1.a), and

28   limit on settleable matter (2000 Permit - Effluent Limitation B.1.d).

COMPLAINT FOR INJUNCTIVE RELIEF          2

1    DEFENDANTS have failed to report or adequately describe violations, including but not limited

2    to sewage collection system overflows.

3    Each violation of a provision of a NPDES Permit issued under CWA § 402 is a violation of the

4    CWA.

5    3.    DEFENDANTS are also routinely violating the Regional Water Quality Control Board's Basin

6    Plan, Environmental Protection Agency (hereafter, "EPA") regulations codified in the Code of Federal

7    Regulations, and toxics standards promulgated by the State Water Resources Control Board in the course

8    of DEFENDANTS' operation of their wastewater treatment plant and sewage collection system, as

9    described in the CWA NOTICE.

10    4.    Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public

11    participation in the enforcement of the CWA. 33 U.S.C. § 1251(e) provides, in pertinent part:

12    *Public participation in the development, revision, and enforcement of any regulation,*
      *standard, effluent limitation, plan or program established by the Administrator or any*
13    *State under this chapter shall be provided for, encouraged, and assisted by the*
      *Administrator and the States.*
14

15    5.    DEFENDANTS illegally discharge to waters which are habitat for threatened or endangered

16    species as that term is defined by the California EPA and the United States EPA.

17    6.    RIVER WATCH seeks declaratory relief, injunctive relief to prohibit future violations, the

18    imposition of civil penalties, and other relief for DEFENDANTS' violations of the terms of both the

19    2000 Permit and 2007 Permit.

20                                **II. PARTIES**

21    7.    Plaintiff, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit

22    corporation duly organized under the laws of the State of California, with headquarters and main office

23    located at 6741 Sebastopol Avenue, Suite 140, Sebastopol, California. RIVER WATCH is dedicated

24    to protect, enhance and help restore the surface and subsurface waters of Northern California. Its

25    members live in Northern California including Marin County where DEFENDANTS' sewage collection

26    system and wastewater treatment plant are located.

27    8.    Members of RIVER WATCH live nearby to waters affected by DEFENDANTS' illegal

28    discharges. Said members have interests in the watersheds identified in this Complaint, which interests

COMPLAINT FOR INJUNCTIVE RELIEF                                      3

1    are or may be adversely affected by DEFENDANTS' violations as set forth herein. Said members use
2    the effected waters and effected watershed areas for domestic water, recreation, sports, fishing,
3    swimming, hiking, photography, nature walks, religious, spiritual and shamanic practices, and the like.
4    Furthermore, the relief sought will redress the injury in fact, likelihood of future injury and interference
5    with the interests of said members.

6    9.        RIVER WATCH is informed and believes and on such information and belief alleges that
7    Defendant SAUSALITO-MARIN CITY SANITARY DISTRICT is a public district formed under
8    California Government Code § 58000 et. sec., with administrative offices located at #1 Fort Baker
9    Road, Sausalito, Marin County, California.

10   10.       DEFENDANTS DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations
11   and entities, who are, or were, responsible for, or in some way contributed to, the violations which are
12   the subject of this Complaint or are, or were, responsible for the maintenance, supervision, management,
13   operations, or insurance coverage of DEFENDANTS' wastewater treatment and sewage collection
14   facilities and operations. The names, identities, capacities, and functions of DEFENDANTS DOES 1 -
15   10, Inclusive are presently unknown to RIVER WATCH , who  shall seek leave of court to amend this
16   Complaint to insert the true names of said DOES Defendants when the same have been ascertained.

17                           **III. JURISDICTIONAL ALLEGATIONS**

18   11.       Subject matter jurisdiction is conferred upon this Court by CWA § 505(a)(1), 33 U.S.C. §
19   1365(a)(1), which states in part,

20           "any citizen may commence a civil action on his own behalf against any person . . . .
             who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B)
21           an order issued by the Administrator or a State with respect to such a standard or
             limitation."
22

23   For purposes of CWA § 505, "the term 'citizen' means a person or persons having an interest which is
24   or may be adversely affected."

25   12.       Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from,
26   own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the
27   waterways and associated natural resources into which DEFENDANTS discharge pollutants, or by
28   which DEFENDANTS' operations adversely affect their interests, in violation of CWA § 301(a), 33

COMPLAINT FOR INJUNCTIVE RELIEF                                                    4

1  U.S.C.§1311(a), CWA § 505(a)(1), 33 U.S.C.§ 1365(a)(1), CWA § 402, and 33 U.S.C.§ 1342. The
2  health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its
3  members may be, have been, are being, and will continue to be adversely affected by DEFENDANTS'
4  unlawful violations. RIVER WATCH and its members contend there exists an injury in fact to them,
5  causation of that injury by DEFENDANTS' complained of conduct herein, and a likelihood that the
6  requested relief will redress that injury.

7  13.    Pursuant to CWA § 505(b)(1)(A), 33 U.S.C.§1365(b)(1)(A), notice of the CWA violations
8  alleged in this Complaint was given more than sixty (60) days prior to commencement of this lawsuit,
9  to: (a) defendant Sausalito-Marin City Sanitary District, (b) the United States EPA, Federal and
10  Regional, and (c) the State of California Water Resources Control Board.

11  14.    Pursuant to CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), a copy of this Complaint has been
12  served on the United States Attorney General and the Administrator of the Federal EPA.

13  15.    Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the facilities
14  for wastewater treatment and sewage collection under DEFENDANTS' operation and/or control, and
15  the sites where illegal discharges occurred, which are the source of the violations complained of in this
16  action, are located within this District.

17  **IV. GENERAL ALLEGATIONS**

18  16.    RIVER WATCH  incorporates by reference all the foregoing including EXHIBIT A as though
19  the same were separately set forth herein.

20  17.    DEFENDANTS own and operate the Sausalito-Marin City Sanitation District Wastewater
21  Treatment Plant located at #1 Fort Baker Road, Sausalito, California ("the Plant"). DEFENDANTS own
22  and operate eight (8) pump stations and ten (10) miles of sewer lines in the unincorporated area,
23  including 5.5 miles of sewer line in unincorporated Marin City. Additional wastewater is conveyed to
24  the Plant from three (3) satellite collection systems, including the City of Sausalito, Tamalpais
25  Community Services District and Golden Gate National Recreational Area. The Plant and sewer lines
26  associated with the Plant discharge pollutants both directly and indirectly into the waterways referenced
27  below.

28

1  18.    All illegal discharges and activities complained of in this Complaint occur in the waterways

2  named in the CWA NOTICE, all of which are waters of the United States, and at the locations identified

3  in detail in the CWA NOTICE .

4  19.    The Regional Water Quality Control Board has determined that the watershed areas and affected

5  waterways identified in the CWA NOTICE are beneficially used for drinking water, water contact

6  recreation, non-contact water recreation, fresh water habitat, wildlife habitat, preservation of rare and

7  endangered species, fish migration, fish spawning, industrial service supply, navigation, and sport

8  fishing.

9              **V.  STATUTORY AND REGULATORY BACKGROUND**

10  20.    CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source"

11  into the navigable waters of the United States, unless such discharge is in compliance with applicable

12  effluent limitations as set by the EPA and the applicable State regulatory agency. These limits are to be

13  incorporated into a NPDES permit for that point source specifically. The effluent discharge standards

14  or limitations specified in a NPDES Permit define the scope of the authorized exception to 33 U.S.C.

15  § 1311(a), such that violation of a permit limit places a polluter in violation of  33 U.S.C. § 1311(a) and

16  thus in violation of the CWA. Additional sets of regulations are set forth in the Basin Plan, California

17  Toxics Plan, the Code of Federal Regulations and other regulations promulgated by the EPA and the

18  State Water Resources Control Board.. CWA § 301(a) prohibits discharges of pollutants or activities

19  not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or

20  a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA

21  § 402, 33 U.S.C. § 1342. The Plant and sewer lines owned and operated by DEFENDANTS are point

22  sources under the CWA.

23  21.    The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable

24  waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

25  22.    The Administrator of the EPA has authorized the Regional Water Quality Control Board to issue

26  NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C.

27  § 1342.

28

COMPLAINT FOR INJUNCTIVE RELIEF                                                                        6

1    23.    The Plant and sewage collection system are currently regulated under the 2007 Permit. Prior to

2    August 8, 2007, the Plant and sewage collection system were regulated under the 2000 Permit.

3    DEFENDANTS have committed numerous violations of the 2000 Permit and the 2007 Permit as

4    detailed in the CWA NOTICE. All violations of a duly authorized NPDES Permit are a violation of the

5    CWA.

6                                    **VI. DEFENDANTS' VIOLATIONS**

7    24.    DEFENDANTS' violations of provisions in the 2000 Permit and the 2007 Permit as detailed in

8    the CWA NOTICE are violations of CWA§ 301(a), 33 U.S.C. § 1311(a). The violations are established

9    in Regional Water Quality Control Board Files for DEFENDANTS, for the Plant and sewage collection

10   facilities, and in studies conducted by DEFENDANTS in compliance with orders from regulatory

11   agencies.

12   25.    The enumerated violations are detailed in the CWA NOTICE, incorporated herein by reference,

13   and below, designating the section of the CWA violated by the described activity.

14   26.    The location of the discharges are the discharges points as described in the CWA NOTICE.

15                                    **VII. CLAIM FOR RELIEF**

16        **Violation of 33 U.S.C. § 1251 et seq., 33 U.S.C. § 1342 (a) and (b), 33 U.S.C. § 1311**

17            **Discharge of Pollutants from Point Sources to Waters of the United States**

18   27.    RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through

19   26 including EXHIBIT A as though fully set forth herein.

20   28.    DEFENDANTS have and continue to violate the CWA as evidenced by the discharges of

21   pollutants from a point source in violation of the limits set forth in their NPDES Permit, and therefore

22   in violation of CWA § 301, 33 U.S.C. § 1311.

23   29    The violations of DEFENDANTS are ongoing and will continue after the filing of this

24   Complaint. RIVER WATCH alleges herein all violations which may have occurred or will occur prior

25   to trial, but for which data may not have been available or submitted or apparent from the face of the

26   reports or data submitted by DEFENDANTS either to the Regional Water Quality Control Board or to

27   RIVER WATCH prior to the filing of this Complaint. RIVER WATCH will file additional amended

28   complaints if necessary to address DEFENDANTS' State and Federal violations which may occur after

COMPLAINT FOR INJUNCTIVE RELIEF                                                          7

1  the filing of this Complaint.  Each of DEFENDANTS' violations is a  separate violation of the CWA.

2  30.    RIVER WATCH avers and believes and on such belief alleges that without the imposition of

3  appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue

4  to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and

5  releases identified in this Complaint.  RIVER WATCH  avers and believes and on such belief alleges

6  that the relief requested in this Complaint will redress the injury to RIVER WATCH and its members,

7  prevent future injury, and protect members' interests which are or may be adversely affected by

8  DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

9  ## VIII. RELIEF REQUESTED

10  WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

11  31.    Declare DEFENDANTS to have violated and to be in violation of the CWA;

12  32.    Issue an injunction ordering DEFENDANTS to immediately operate the Plant and Sewage

13  Collection System in compliance with the CWA and applicable effluent and receiving water limitations

14  as set forth in the 2000 Permit and the 2007 Permit, as well as State and Federal standards;

15  33.  Order DEFENDANTS to pay civil penalties of $27,500.00 per violation per day for their violations

16  of the CWA;

17  34.    Order DEFENDANTS to pay reasonable attorneys' fees and costs of RIVER WATCH (including

18  expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and,

19  35.    For such other and further relief as the court deems just and proper.

20

21  DATED:  April 21, 2008

22  JERRY BERNHAUT
   Attorney for Plaintiff
   NORTHERN CALIFORNIA RIVER WATCH,

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF                                          8

# ·Law Office of Jack Silver



P.O. Box 5469       Santa Rosa, California 95402
Phone 707-528-8175     Fax 707-528-8675
lhm28843@sbcglobal.net


**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

July 5, 2007

Head of Operations for the
Sausalito-Marin City Sanitary District
#1 Fort Baker Road
Sausalito, CA 94965-3101

### *Re:    Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Head of Operations:

The Clean Water Act ("CWA" or the "Act") § 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of the intent to sue to the alleged violator, the Environmental Protection Agency ("EPA") and the State in which the violations occur.

Northern California River Watch ("River Watch") hereby places the Sausalito-Marin City Sanitary District, hereinafter   referred to as "the Discharger" on notice that following the expiration of sixty (60) days from the date of this NOTICE, River Watch intends to  bring suit in the United States District Court against the Discharger for continuing violations of an effluent standard or limitation, permit condition or requirement, a Federal or State Order or Plan issued under the CWA in particular, but not limited to CWA § 505(a)(1), 33 U.S.C. § 1365(a)(l), the Code of Federal Regulations, and the Basin Plan, as exemplified by violations of permit conditions or limitations in the Discharger's National Pollutant Discharge Elimination System ("NPDES") Permit.

## INTRODUCTION

The CWA  regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of enumerated statutory exceptions. One such exception authorizes a polluter, who has been issued a permit pursuant to CWA § 402, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the 33 U.S.C. § 131l(a) prohibition, such that violation of a permit limit places a polluter in violation of 33 U.S.C. § 131 l(a) and thus in violation of the

CWA. Private parties may bring citizens' suits pursuant to 33 U.S.C. § 1365 to enforce effluent standards or limitations, which are defined as including violations of 33 U.S.C. § 131l(a) and 33 U.S.C. § 1365(f)(l).

The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria. See 33 U.S.C. § 1342(b) In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards, to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating discharges in the region at issue in this NOTICE is the Regional Water Quality Control Board, San Francisco Bay Region ("RWQCB").

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

1.   *The specific standard, limitation, or order alleged to have been violated.*

     To comply with this requirement River Watch has identified the NPDES Permit of the Sausalito-Marin City Sanitary District and specifically identified the applicable permit standard, limitation or condition being violated. A violation of the Permit is a violation of the CWA.

2 .   *The activity alleged to constitute a violation.*

     Most often the Permit limitation being violated is self-explanatory and an examination of its language is sufficient to inform the Discharger, especially since the Discharger is responsible for complying with that Permit condition. In addition, River Watch has set forth narratives describing with particularity the activities leading to violations and has incorporated by reference the Discharger's own records and other public documents in the Discharger's possession or otherwise available to the Discharger regarding its Permit, compliance with that Permit and any other information designed to inform the Discharger or the public.

3 .   *The person or persons responsible for the alleged violation.*

     The person or persons responsible for the alleged violations are the entities identified collectively as the Discharger and those of its employees responsible for compliance with the Permit.

4 .   *The location of the alleged violation.*

The location or locations of the various violations are identified in the Discharger's Permit and also in records created and/or maintained by or for the Discharger which relate to the Discharger's wastewater treatment plant and related activities as further described in this NOTICE.

5.   *The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.*

River Watch has examined both RWQCB and the Discharger's records for the period from July 1, 2002 through July 1, 2007.  The range of dates covered by this NOTICE is from July 1, 2002 through July 1, 2007.   River Watch will from time to time update this NOTICE to include all violations which occur after the range of dates currently covered by this NOTICE. Some of the violations are continuous and therefore each day constitutes a violation.

6.   *The full name, address, and telephone number of the person giving notice.*

The full name, address, and telephone number of the person giving notice appears near the end of this NOTICE under CONTACT INFORMATION.

## DISCHARGER'S OPERATIONS

The Discharger owns and operates the Sausalito-Marin City Sanitation District Wastewater Treatment Plant located at #1 Fort Baker Road, Sausalito, California (" the Plant"). The Discharger owns and operates 8 pump stations and 10 miles of sewer lines in the unincorporated area, including 5.5 miles of sewer line in unincorporated Marin City.  Additional wastewater is conveyed to the Plant from 3 satellite collection systems, including the City of Sausalito, Tamalpais Community Services District and Golden Gate National Recreational Area. Each satellite system is operated independently from the Discharger and conveys wastewater to a discrete location into the Discharger's collection system. Each satellite system is responsible for its own maintenance and capital improvements.

Treated wastewater is discharged from the Plant at a discharge point 300 feet offshore into Central San Francisco Bay. The Plant and associated collection system are regulated under Order No.: 00-060, NPDES Permit No.: CA0038067, and by Order No.: R2-2003-0109, NPDES Permit No.: CA0038067, amending the Permit to substitute enterococci for total coliform as a bacterial effluent limit.

The Plant has an extensive history of effluent limit violations, most notably for total suspended solids ("TSS") and biochemical oxygen demand ("BOD"). The Plant has a maximum wet weather design flow of 6 million gallons per day ("mgd") which is periodically exceeded due to

infiltration into the collection system. When high influent flows exceed the capacity of the fixed film reactors to provide biological treatment, this phase of treatment is bypassed by a portion of the flow which is then blended with effluent which has received full treatment. The Discharger's Permit allows for the bypassing of individual treatment processes provided that the combined discharge is fully treated and the partially treated wastewater complies with effluent and receiving water limits in the Permit. A March 10, 2006 Inspection Report raised questions about the adequacy of reporting partial bypass events and recommended that the RWQCB evaluate compliance with blending requirements whenever the daily flow reported in a monthly discharge monitoring report (DMR) is greater than 6 mgd.

The Plant experiences significant salt water intrusion due to tidally influenced infiltration. A performance study of the Plant conducted in 2005 concluded that high chloride concentrations in the influent may contribute to BOD and TSS violations by stressing biological treatment and impairing settlement of solids. The Discharger alleges that the sewer lines where tidal influenced infiltration occurs, are located in the satellite systems owned and operated by the City of Sausalito and the Tamalpais Community Services District. In addition to high levels of infiltration, there are numerous overflows from these satellite collection systems documented in sewage system overflow ("SSO") reports in RWQCB records. There are also overflows from the Discharger's collection system documented in SSO reports in RWQCB records. A number of the reported overflows from the Discharger's collection system reached storm drains which discharge into state waters, in violation of the discharge prohibitions in the Discharger's Permit. River Watch members residing in the area of the Plant and other local residents have reported observing sewage spills which were not reported to the RWQCB. River Watch members have also related incidents where they reported SSOs into state waters to the Discharger's staff, only to be told the overflows were not significant enough to justify a containment and clean up response.

Regulatory inspectors have given an overall unsatisfactory rating to the Discharger's implementation of its self monitoring program and records and reporting requirements. According to a compliance evaluation inspection performed by Tetra Tech, Inc. on December 13, 2005, under contract with the United States EPA, a number of the Discharger's reports of exceedances of effluent limits failed to include an explanation of cause or corrective measures, as required by the Discharger's Self Monitoring Program. In the same inspection report, the consultant noted the improper collection of coliform samples and inconsistencies between data reported in DMRs and analytical results.

The RWQCB has prepared a tentative Cease and Desist Order ("CDO") concurrent with a Tentative Order reissuing waste discharge requirements. The Discharger has submitted an infeasibility study regarding its ability to comply with effluent limits for toxic pollutants in the new Permit. The CDO requires the Discharger to comply with interim limits, based on past performance or limits in previous permits, where feasible. The Order recognizes "considerable uncertainty in determining effective measures ... necessary to achieve compliance" (Tentative CDO, p.2). The Order allows time to explore source control measures before implementing

upgrades to the Plant.   In prior communications, the Discharger's staff had downplayed the need for source control based on the alleged minimal presence of industrial users in the service area. The CDO lists potential sources of the subject pollutants in Table 2 of the Tentative Order. The common regulatory practice is to provide interim limits without any allowance for infeasibility, where infeasibility to meet final limits has been demonstrated. Here, allowing for infeasibility to meet interim limits reflects the Discharger's historically poor performance and tendency to minimize violations. River Watch intends to seek an independent compliance audit of the Discharger's operations at the Plant as injunctive relief in a settlement agreement or court order.

The Discharger's illegal discharge of untreated wastewater and of treated wastewater exceeding effluent limits is a significant contribution to the degradation of the San Francisco Bay and tributary waters, with serious adverse effects on beneficial uses. River Watch members residing in the area have a vital interest in bringing the Discharger's operations at the Plant into compliance with the CWA.

## REMEDIAL MEASURES REQUESTED

River Watch believes the following remedial measures are necessary to bring the Discharger into compliance with its NPDES permit, and to prioritize remedial measures to reflect the biological impacts of the Discharger's ongoing non-compliance:

1.  A reduction of collection system inflow and infiltration through a an aggressive collection system management, operation and maintenance ("CMOM") program, coordinated with the satellite systems conveying wastewater to the Plant, with clear time lines for prioritized repairs.

2.  Mandatory private sewer lateral inspection and repair programs in each collection system jurisdiction, triggered by sale of property or based on geographical, age and/or composition factors. River Watch understands that the Discharger has no effective authority over the satellite systems. River Watch intends to serve concurrent Notices of Violations on the satellite districts and anticipates a joint, cooperative resolution of concerns raised in the Notices.

3.  Compliance with monitoring and reporting requirements, especially regarding all overflows which reach storm drains or discharge directly to state waters.

4.  Creation of web site capacity to receive private party reports of SSOs. Provision of notification to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports.

5.  Installation of a headworks.

6.    Development of a pre treatment/source control program.

7.    Performance of human marker testing on creeks adjacent to sewer lines to test for sewage contamination from underground exfiltration.

## VIOLATIONS

From July 1, 2002 through July 1, 2007, the Discharger has violated the requirements of the Discharger's NPDES Permits, the Basin Plan and the Code of Federal Regulations as those requirements are referenced in the Discharger's NPDES Permits. Said violations are evidenced and reported in the Discharger's DMRs, its testing data compiled in compliance with its Permits or other orders of the RWQCB, and other documentation filed with the RWQCB or in the Discharger's possession, and as evidenced by unpermitted discharges due to failures in the collection system of the Plant. Furthermore these violations are continuing. The violations, established in DMRs, raw data and records of the RWQCB, include but are not limited to the following categories in the Permit:

**Discharge Prohibitions**

Violations    Description
**1800**         Collection system overflows caused by underground exfiltration. This is a case in which untreated sewage is discharge from the collection system prior to the untreated sewage reaching the Plant. Underground discharges are alleged to have been continuous throughout the 5 year period from July 1, 2002 to July 1, 2007. ( Order No. 00-060, Discharge Prohibitions A.2, A.4).

Evidence to support the allegation of underground discharge of raw sewage exists in the Discharger's own mass balance data regarding the number of connections in the service area, estimates of average daily volume of wastewater per connection, influent flow volumes to the Plant reported in DMRs, video inspection of the collection system, and testing of waterways adjacent to sewer lines, including creeks and wetlands, for nutrients, pathogens and other constituents indicating sewage contamination, such as caffeine.

**125**          SSOs, as evidenced in San Francisco Bay Water Board SSO Reporting Program Database Records (from Dec.1, 2004 to May 2, 2007), including the overflow of 450 gallons on December 13, 2006 at Marinship near Harbor View Drive, the overflow of 300 gallons on November 15, 2006 at 19 Park Circle Drive, and the overflow of 700 gallons on at #1 Fort Baker Road on December 31, 2005 – each of which emptied into a storm drain which ultimately discharged to waters of the state. Also, unrecorded overflows witnessed by local residents.

Order No. 00-060, Discharge Prohibition A.2: "The Bypass or overflow of untreated wastewater to Waters of the State, either at the treatment plant or from the discharger's collection system or

pump stations tributary to the treatment plant, is prohibited, except as provided under conditions stated in 40 CFR 122.42 (m)(4) and (n)."

Order No. 00-060, Discharge Prohibition A.4: " Discharges of water, materials or wastes other than storm water, which are not otherwise authorized by an NPDES permit, to a storm drain or waters of the State are prohibited."

**Effluent Limitations**

| Violations | Description |
|---|---|
| 65 | Limit TSS ( Order No. 00-060, Effluent Limitation B.l. b) |
| 26 | Limit on biochemical oxygen demand (Order No. 00-060 Effluent Limitation B.1.a) |
| 15 | Limit on settleable matter. (Order No.-00-060 Effluent Limitation B.1.d) |
| 4 | Limit on enterococci bacteria (Order No. R2-2003-0109, 3.b) |

**Monitoring Requirements**

| Violations | Description |
|---|---|
| 70 | Failure to monitor, report or adequately describe violations. The majority of these violations occur due to failure to report violations of Discharge Prohibitions A.2 and A.4 of Order No. 00-060, as well as failure to adequately describe reported violations, as noted in inspection reports. |

## CONTACT INFORMATION

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472, telephone 707-824-4372.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
Jerry Bernhaut, Esquire
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

## CONCLUSION

The violations as set forth in this NOTICE effect the health and enjoyment of members of River Watch who reside and recreate in the affected communities. The members of River Watch use the affected watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shell fish harvesting, hiking, photography, nature walks and the like. The members' health, use and enjoyment of this natural resource is specifically impaired by the Discharger's violations of the CWA as set forth in this NOTICE.

River Watch believes this NOTICE sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit under § 505(a) of the Clean Water Act against the Discharger for violations at the Plant identified in this NOTICE.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations noted in this NOTICE. However, if the Discharger wishes to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated soon so that they may be completed before the end of the 60-day notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when that notice period ends.

Very truly yours,

Jerry Bernhaut

cc:
Northern California River Watch
6741 Sebastopol Avenue, Suite 140
Sebastopol, CA 95472

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N. W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
US. Environmental Protection Agency Region 9
75 Hawthorne St.
San Francisco, CA 94105

Celeste Cantü, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-100

City Manager
City of Sausalito
420 Litho Street
Sausalito, CA 94965

City Council
Council Chambers
City of Sausalito
420 Litho Street
Sausalito, CA 94965

Mary Wagner, City Attorney
City of Sausalito
420 Litho Street
Sausalito, CA 94965

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

NORTHERN CALIFORNIA RIVER WATCH, A NON-PROFIT CORPORATION

## DEFENDANTS

SAUSALITO-MARIN CITY SANITARY DISTRICT and DOES 1 - 10, INCLUSIVE

**(b)** County of Residence of First Listed Plaintiff  SONOMA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    MARIN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jack Silver, Esq.  / Jerry Bernhaut, Esq.  707-528-8175
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469

Attorneys (If Known)

Kenton L. Alm, Esq.    510-808-2000
Meyers Nave Riback Silver & Wilson
555 12th Street, Suite 1500
Oakland, CA 94607

E-filing
JCS
ADR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                       and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☒ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access to Justice |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | Alien Detainee | | State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
33 U.S.C. Section 1251, et seq.

Brief description of cause:
Current and ongoing violations of the Clean Water Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Injunctive Relief
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND        ☐ SAN JOSE

DATE
04/18/2008

SIGNATURE OF ATTORNEY OF RECORD